UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DEAN KROGSTAD, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff<br><br>v.<br><br>NATIONWIDE BIWEEKLY ADMINISTRATION, INC., *et al.*,<br><br>Defendants | Case No.: 2:16-cv-00465-APG-DJA<br><br>**Order Denying Motions to Dismiss for Lack of Personal Jurisdiction**<br><br>[ECF Nos. 136, 141] |

Named plaintiff Dean Krogstad filed this putative class action for breach of contract and unjust enrichment against Nationwide Biweekly Administration, Inc. (NBA) and Loan Payment Administration LLC (LPA) in 2016. After I dismissed NBA and LPA's third-party complaint and the Ninth Circuit affirmed, Krogstad filed an amended complaint joining NBA and LPA's founder and sole shareholder, Daniel Lipsky. NBA, LPA, and Lipsky now move to dismiss for lack of personal jurisdiction. I deny the motions because (1) NBA and LPA have waived the affirmative defense of lack of personal jurisdiction; (2) I may exercise specific jurisdiction over NBA, LPA, and Lipsky for Krogstad's claims; and (3) exercise of personal jurisdiction over NBA, LPA, and Lipsky for the unnamed, out-of-state class members' claims does not violate due process.

**I.  BACKGROUND**

NBA and LPA offered an "Interest Minimizer" (IM) program that permitted customers to divide their monthly mortgage payments into smaller installment payments made to NBA and LPA. ECF No. 122 at ¶ 2. NBA and LPA marketed the IM program through direct mail, including to consumers in Nevada. *Id.* at ¶ 25. NBA and LPA also marketed the program more

broadly on the internet and on television. *Id.* at ¶ 29.  Customers who enrolled signed a form contract under which NBA and LPA promised to make payments on behalf of the customer until the loan was paid in full. *Id.* at ¶ 19.  NBA and LPA collected a setup fee of up to $995 from each participant. *Id.* at ¶ 23.  In 2015, however, NBA and LPA's partner banks terminated their relationships with NBA and LPA. *Id.* at ¶ 40.  In turn, NBA and LPA suspended the IM program, ceased making payments on behalf of their customers, and retained the setup fees. *Id.* at ¶¶ 40, 42-43.

Lipsky is the "founder, sole officer, sole shareholder, [and] principal managing control person" of NBA and LPA. *Id.* at ¶ 14.  Krogstad alleges that Lipsky "controlled all of NBA's and LPA's business activities within the State of Nevada and throughout the nation." *Id.* at ¶ 30.  Among other things, Lipsky "personally obtained the names, addresses and loan balance information from public records" for the direct mailers, which he authored. *Id.* at ¶ 25.

Krogstad is a resident of Clark County, Nevada. *Id.* at ¶ 11.  He executed the form contract with NBA and LPA to join the IM program in January 2015. *Id.*  After NBA and LPA suspended the IM program, Krogstad filed this putative class action against them. ECF No. 1.  NBA and LPA filed an answer and a third-party complaint against one of their banking partners, BMO Harris Bank. ECF Nos. 11; 40.  BMO moved to dismiss the third-party complaint and compel arbitration. ECF No. 51.  I granted BMO's motion, the Ninth Circuit affirmed, and the United States Supreme Court denied certiorari. ECF Nos. 76; 89; 94.

The parties stipulated to stay proceedings pending the appeal. ECF No. 83.  After the stay was lifted, Krogstad filed an amended complaint naming Lipsky as a defendant. ECF No. 122.  NBA, LPA, and Lipsky now move to dismiss for lack of personal jurisdiction. ECF Nos. 136; 141.

## II. DISCUSSION

NBA, LPA, and Lipsky argue that I cannot exercise general or specific personal jurisdiction over them for Krogstad's claims and, alternatively, that I cannot exercise personal jurisdiction over them for the unnamed class members' claims. Krogstad responds that NBA and LPA waived their right to challenge personal jurisdiction and that I can exercise specific personal jurisdiction over the defendants for both his and the unnamed class members' claims.

### A. NBA and LPA's Waiver of Challenge to Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) allows a party to assert the defense of lack of personal jurisdiction by motion before filing a responsive pleading. In turn, Rule 12(h)(1) provides that the defense is waived by failing to bring such a motion or include it in a responsive pleading. "[A] party's failure to satisfy those minimum steps" in Rule 12(h)(1) does not "constitute[] the only circumstance under which the party will be deemed to have waived a defense." *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1318 (9th Cir. 1998), *as amended on denial of reh'g and reh'g en banc* (June 15, 1998). Instead, "[m]ost defenses, including the defense of lack of personal jurisdiction, may be waived as a result of the course of conduct pursued by a party during litigation." *Id.*

Here, NBA and LPA did not raise lack of personal jurisdiction in either their answer or a pre-answer motion. Instead, they moved to dismiss over three and a half years after Krogstad filed his complaint. And even putting aside Rule 12(h)(1), NBA and LPA's conduct demonstrates waiver because they filed an answer, a third-party complaint, and appealed my order dismissing the third-party complaint to the United States Supreme Court without once raising lack of personal jurisdiction. NBA and LPA argue that these proceedings have not moved to the merits, but neither the Federal Rules nor the Ninth Circuit's decisions explicitly

require that as a basis for waiver.  NBA and LPA have waived their defense based on lack of personal jurisdiction.

The trio of United States Supreme Court decisions NBA and LPA rely on do not mandate a different result.  First, they argue that under *Rockwell International Corp. v. United States*, 549 U.S. 457 (2007), Krogstad's amended complaint supersedes his initial complaint and "any alleged waiver of [the allegations in that complaint] become[s] irrelevant . . . ." ECF No. 144 at 2.  But *Rockwell* involved a motion to dismiss for lack of subject matter jurisdiction, which cannot be waived. 549 U.S. at 473-74; *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) ("The defense of lack of subject matter jurisdiction cannot be waived, and the court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction.").  NBA and LPA do not identify any cases where a party waived personal jurisdiction through its conduct but then raised a successful attack on personal jurisdiction after the filing of an amended complaint.  Indeed, such a result would undermine Rule 12(h)(1)'s policy favoring litigation of personal jurisdiction at the outset of litigation.

NBA and LPA next point to two Supreme Court decisions issued since the beginning of this litigation.  However, *BNSF Railway Company v. Tyrrell* addresses general jurisdiction, which Krogstad concedes does not apply here. 137 S. Ct. 1549, 1559 (2017); ECF No. 143 at 11.  And in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, the Supreme Court "concededly undertook a 'straightforward' application of 'settled principles' of specific personal jurisdiction . . . ." *McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 165 (S.D. Cal. 2019) (quoting *Bristol-Myers*, 137 S. Ct. 1773, 1783 (2017).  NBA and LPA thus could have raised their jurisdictional challenge under existing precedent.  So I deny their motion because they waived the defense of lack of personal jurisdiction.  Even if they had not waived

4

this defense, as discussed below, NBA and LPA are subject to specific personal jurisdiction on the claims asserted against them.

### B. Personal Jurisdiction for Krogstad's Claims

"When no federal statute governs personal jurisdiction, the district court applies the law of the forum state." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Nevada's long-arm statute is co-extensive with federal standards, so I may exercise personal jurisdiction if doing so comports with federal constitutional due process. Nev. Rev. Stat. § 14.065(1); *Walden v. Fiore*, 571 U.S. 277, 283 (2014). "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least minimum contacts with the relevant forum such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quotation omitted). "There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant—general jurisdiction and specific jurisdiction." *Boschetto*, 539 F.3d at 1016. Krogstad concedes that general jurisdiction does not apply, so I address only whether he has established specific jurisdiction. ECF Nos. 143 at 11; 145 at 11.

Specific jurisdiction depends on an "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (quotation omitted). I apply a three-prong test to determine whether specific jurisdiction exists: (1) the defendant "must have performed some act or consummated some transaction with the forum by which it purposefully availed itself of the privilege of conducting business" in the forum state; (2) the plaintiff's claims

"must arise out of or result from [those] forum-related activities; and (3) the exercise of jurisdiction must be reasonable." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

When a defendant moves to dismiss for lack of personal jurisdiction on the basis of written materials rather than an evidentiary hearing, I must determine whether the plaintiff's "pleadings and affidavits make a prima facie showing of personal jurisdiction." *Schwarzenegger*, 374 F.3d at 800 (quotation omitted). In deciding whether a plaintiff has met his burden, I must accept as true the uncontroverted allegations in his complaint, but a plaintiff cannot rest on the "bare allegations" of his complaint. *Id.* (quotation omitted).

   *1. Purposeful Availment*

The term "purposeful availment" describes two distinct analyses: purposeful availment and purposeful direction. *Schwarzenegger*, 374 F.3d at 802. "A purposeful availment analysis is most often used in suits sounding in contract." *Id.* "Purposeful availment requires that the defendant engage in some form of affirmative conduct allowing or promoting the transaction of business within the forum state." *Doe v. Am. Nat. Red Cross*, 112 F.3d 1048, 1051 (9th Cir. 1997) (quotation omitted). "This requirement ensures that a defendant 'will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person.'" *Id.* (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Krogstad alleges that NBA, LPA, and Lipsky marketed the IM program to Nevada residents through direct mail. Moreover, Lipsky "personally obtained the names, addresses and loan balance information from public records" for the direct mailers, which Lipsky authored. ECF No. 122 at ¶ 25. Taken together, these allegations suggest that NBA, LPA, and Lipsky

obtained information about Nevada residents and purposefully marketed the IM program to those individuals. Because Krogstad alleges that the defendants engaged in affirmative conduct to promote the IM program in Nevada, Krogstad has made a prima facie showing of purposeful availment.

### 2. *Relation between contacts and claim*

Krogstad must plead facts showing that he would not have suffered an injury "but for" the defendants' activities in Nevada. *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007). Lipsky argues in reply that *Bristol-Myers* overruled this standard, as well as the Ninth Circuit's three-part test for assessing specific jurisdiction. ECF No. 146 at 4-5. However, the *Bristol-Myers* court noted that it was applying "settled principles" of specific personal jurisdiction. 137 S. Ct. at 1783. And the Ninth Circuit has regularly applied the "but for" standard and the three-part test after *Bristol-Myers. See, e.g.*, *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (applying three-part test); *Morris on behalf of Oregon Cascade Corp. v. Harley*, 720 F. App'x 326, 328 (9th Cir. 2017) (applying "but for" standard). So I apply the "but for" standard as part of the three-part test. Here, but for NBA, LPA, and Lipsky's affirmative conduct marketing the IM program to Nevada residents, Krogstad would not have suffered his injury from the program's suspension. So Krogstad has shown that his claim arises out of the defendants' contacts with Nevada.

### 3. *Reasonableness*

Because Krogstad has "shown that the exercise of personal jurisdiction satisfies the first two prongs of the personal jurisdiction test, the burden shifts to the defendant[s] to make a 'compelling case' that the exercise of jurisdiction would be unreasonable." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 745 (9th Cir. 2013) (quoting *Burger King*,

7

471 U.S. at 476-77). None of the defendants explicitly argues the exercise of jurisdiction would be unreasonable. Thus, they have not made a "compelling case" of unreasonableness. Krogstad therefore has established specific jurisdiction over the defendants on his claims.

**C. Personal Jurisdiction for the Unnamed, Out-of-State Class Members' Claims**

The defendants also turn to *Bristol-Myers* for the proposition that exercise of jurisdiction over them for the unnamed, out-of-state class members' claims would violate due process. ECF No. 136 at 8-9. In *Bristol-Myers*, the Supreme Court held that the exercise of personal jurisdiction over a non-resident defendant for non-resident plaintiffs' claims would violate due process because the non-resident plaintiffs' claims were insufficiently related to the defendant's forum-state contacts. 137 S. Ct. at 1781. The Supreme Court explicitly left open the questions of whether its holding reaches the federal courts and whether its logic applied to class actions. *Id.* at 1783-84; *id.* at 1789 n.4 (Sotomayor, J., dissenting) ("The Court today does not confront the question whether its opinion here would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there.").

Although the Ninth Circuit has not reached these questions, the Seventh Circuit has since held that, in a federal class action, unnamed class members are not required to establish personal jurisdiction over the defendant. *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020). Other district courts in the Ninth Circuit agree and distinguish *Bristol-Myers* from federal class actions. *See, e.g.*, *Lacy v. Comcast Cable Commc'ns, LLC*, No. 3:19-CV-05007-RBL, 2020 WL 1469621, at *2 (W.D. Wash. Mar. 26, 2020). As one district court reasoned, (1) every plaintiff in a mass action is a "real party in interest" while only the named plaintiffs in a class action are, and (2) Federal Rule of Civil Procedure 23 "imposes additional due process safeguards on class

actions that do not exist in the mass tort context." *Sotomayor v. Bank of Am., N.A.*, 377 F. Supp. 3d 1034, 1038 (C.D. Cal. 2019). I agree with these decisions. Additionally, the defendants' interpretation would effectively limit personal jurisdiction in many nationwide class actions to a defendant's home state and could lead to duplicative nationwide class actions if the defendants hailed from different states. So I deny the defendants' motions to dismiss.

### III.   CONCLUSION

I THEREFORE ORDER that defendants Nationwide Biweekly Administration, Inc., Loan Payment Administration LLC, and Daniel Lipsky's motions to dismiss for lack of personal jurisdiction **[ECF Nos. 136, 141] are DENIED.**

DATED this 3rd day August, 2020.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE